IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MAIYA MCCOY, on behalf of herself and all others similarly situated | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| NEABAR, INC. d/b/a GATSBY'S PUB, KEVIN NEADING, BARRY BARBERA, and BARRY BARBERA, JR. | ) ) ) ) |
| Defendants. | ) **JURY DEMAND** ) **ENDORSED HEREON** |

## COLLECTIVE ACTION COMPLAINT FOR UNPAID OVERTIME WAGES

Plaintiff Maiya McCoy ("McCoy"), individually and on behalf of all others similarly situated, alleges as follows for her Complaint against Defendants Neabar, Inc. d/b/a Gatsby's Pub, Kevin Neading, Barry Barbera, and Barry Barbera, Jr. ("Defendants"):

1. McCoy worked as an employee for Defendants from about April 2021 to about May 2022.

2. McCoy and similarly situated employees worked for Defendants as Dancers.

3. Defendant Neabar, Inc. is a "Gentleman's Club."

4. Defendants' revenues exceed $500,000 per year.

5. Defendant Neabar, Inc. is an Ohio corporation that does business in Summit County, Ohio.

6. Defendant Neabar, Inc. is an enterprise engaging in interstate commerce.

7. Defendants Kevin Neading, Barry Barbera, and Barry Barbera, Jr. are owners of Defendant Neabar, Inc.

8. Defendants Kevin Neading, Barry Barbera, and Barry Barbera, Jr. have a significant ownership interest in Defendant Neabar, Inc.

9. Defendants Kevin Neading, Barry Barbera, and Barry Barbera, Jr. control significant aspects of Defendant Neabar, Inc.'s day-to-day functions.

10. Defendants Kevin Neading, Barry Barbera, and Barry Barbera, Jr. acted directly or indirectly in the interest of Defendant Neabar, Inc. in relation to McCoy and similarly situated Dancers.

11. Defendants Kevin Neading, Barry Barbera, and Barry Barbera, Jr. were involved in the day-to-day operation of Defendant Neabar, Inc., had some directly responsibility for the supervision of McCoy and similarly situated Dancers, and were directly involved in making decisions concerning the payment (and non-payment) of wages to McCoy and similarly situated Dancers.

12. Defendants had an economic interest in not paying McCoy and similarly situated Dancers minimum wage and time-and-a-half overtime wages for all hours worked.

13. This Court has subject matter jurisdiction over the claims and parties raised in this Complaint.

14. This Court has supplemental jurisdiction over McCoy and similarly situated Dancers' state-law claims pursuant to 28 U.S.C. § 1367(a).

15. This Court has personal jurisdiction over the parties to this action.

16. Venue is proper in the Northern District of Ohio Eastern Division because Defendants conducted activity in this district and because part of the claim for relief arose in this district.

17. McCoy consents to become a party plaintiff in this action and has attached her written consent hereto as Exhibit A.

18. McCoy has hired the undersigned counsel and has agreed to pay them reasonable attorney's fees and costs if she is successful on one or more of the claims set forth herein.

**Defendants' Misclassification of McCoy and Similarly Situated Dancers as Independent Contractors**

19. Defendants misclassified McCoy and similarly situated Dancers as independent contractors.

20. McCoy and similarly situated Dancers were employees of Defendants.

21. Throughout McCoy's employment with Defendants, Defendants mantained a list of rules that McCoy and similarly situated Dancers were obligated to follow. This list included the following:

- "No Smoking anywhere in the building, this includes dressing rooms and restroom. First time fine $5.00, next time FIRED!!"

- "You must wear <u>colored</u> latex on your nipples and aerola [sic]. First time, warning, second time FIRED. Glitter and Sparkles are NOT a color. <u>You must be covered, we are not a topless bar.</u> You are responsible for your own latex."

- "Pay Tip-out, it's only $15.00. Missed tip-outs must be paid double before you work again! Excessive skippers will be FIRED!"

- "NO drugs: Selling buying or using. If caught you will be FIRED!!!!!!!"

- "No underage drinking! Do not bring any alcohol into the building. If caught, you will be FIRED."

- "Do not steal from anyone, if caught, FIRED."

- "No fighting with other dancers, staff or customers. You will be FIRED and or Barred."

- "Stay out from behind the bar. No exceptions."

- "All dancers must be walked to your car or ride by a bouncer. ASK!!"
- "No leaving with customers."
- "Do not get drunk, a few drinks is OK, it only makes you look bad."
- "Look your best when working, Hair, Makeup, Hygiene and Outfits. If you are not up to standard, you will be sent home. Stay in shape. This is a visual business."
- "Bring your own lock, the Bar is not responsible for lost or stolen property. Locks available at the Bar. No bags in the VIP area."

22. During McCoy's employment with Defendants, Defendants increased the minimum hours that Dancers must work per shift from 2 hours to 3 hours.

23. Defendants required McCoy and similarly situated Dancers to wear high heeled shoes.

24. Defendants required McCoy and similarly situated Dancers to wear "t-shaped" thongs. That is, the top-back portion of the thong must be shaped like a "t."

25. Despite Defendants' rule that Dancers may not get drunk, Defendants maintained a policy that McCoy and similarly situated Dancers could not refuse drinks (alcoholic or otherwise) from customers.

26. Defendants also mandated that McCoy and similarly situated employees follow a list of additional rules it called "Dancer Etiquette." This list included the following:

- "Please watch what you talk about in the smoking room. Customers <u>ARE</u> listening and talking!!"
- "Do not approach or try to cut in on a customer while another dancer is with them."
- "No using your cell phone while dancing, text or voice. Its just rude."

- "While dancing, the customer is the priority, do not talk with others. Keep your focus on the customer, they are paying for your time."

- "No trash talking about other dancers, staff or customers. It makes YOU look Bad."

- "NO sob stories or how much money you need to make to customers. It makes you look bad, customers are tired of hearing it."

- "Keep your boyfriends out of the bar while working."

- "Always be courteous to the customer, they are the source of your income."

- "Ask everyone for a dance, a customer should not leave because they have not been asked. Move around, its a must."

- "If you have a problem with a customer, let the Staff handle it. Do not hit, yell or throw things at them."

- "If there is a problem with the staff (Bartender or Bouncer) see the Manager, Justin."

27. Defendants prohibited McCoy and similarly situated Dancers from choosing songs for dances as they pleased: "ONLY the bartender and security personnel are permitted to play music. Dancers are permitted to play a couple songs of their choice but ONLY if they are going on stage or in VIP and must have permission from the bartender or security. -Barry"

28. Defendants also mandated that, except when in the VIP room, McCoy and similarly situated Dancers were prohibited from "touch[ing] a customer's face with their crotch or butt."

29. Defendants mandated that McCoy and similarly situated Dancers charge at least $15 per song for VIP room dances, and Defendants would not collect more than $15 per song from customers:

> VIP room dances are $15/song. Security will do whatever they can, within reason, to get dancers their $15/song minimum. However, if a dancer charges more than

$15/song, that is her responsibility to inform the customer clearly before she goes into the VIP and keep updating the customer while in VIP. If there is a discrepancy, security is responsible only for getting the $15 minimum as posted on signs in the VIP room.

30. Defendants set the hours of operation, which were 12:00 pm to 2:30 am Monday through Saturday.

31. Defendants controlled and paid for the lighting, décor, layout, music, advertising, phones, and insurance.

32. Defendants tracked the hours that McCoy and similarly situated Dancers worked for Defendants through a sign in sheet.

33. On multiple occasions during McCoy's employment with Defendants, Defendants sent Dancers home for violating the rules that it set.

34. On multiple occasions during McCoy's employment with Defendants, Defendants fined Dancers for breaking Defendants' rules.

35. McCoy and similarly situated Dancers worked in a continuous and indefinite relationship for Defendants. Indeed, McCoy worked more than forty hours per week for Defendants for over a year.

36. McCoy and similarly situated Dancers did not provide any investment or specialized equipment for Defendants.

37. Defendants pay for everything required to run the business, and Defendants' investment in the business is many thousands of dollars.

38. Defendants' investment in the business is very significantly higher than McCoy and similarly situated employees' investment.

39. Defendants' exercised immense control over McCoy and similarly situated Dancers' work, which greatly influenced McCoy and similarly situated Dancers' earnings.

40. Defendants were responsible for advertising, location, business hours, maintenance of the club, as well as providing food and drinks.

41. Defendants exercised immense control over McCoy and similarly situated Dancers' work through its extensive list of rules and "etiquette" posting, its setting of business hours, its setting of cover charges and prices, its setting of the location for the business, and its creation and maintenance of the food and beverage menu.

42. Dancers were an integral part of Defendants' business as a "Gentleman's Club."

**Defendants' Failure to Pay Any Wages to McCoy and Similarly Situated Employees**

43. Throughout her employment with Defendants, Defendants never paid McCoy and similarly situated Dancers any wages whatsoever. Indeed, McCoy and similarly situated Dancers actually paid Defendants.

44. At the beginning of each shift, Defendants required that McCoy and similarly situated Dancers pay $15 to the "house" (Defendants).

45. McCoy and similarly situated Dancers performed work for Defendants that included pole dances and private lap dances.

46. McCoy and similarly situated Dancers earned tips for performing private dances and pole dances on stage, but Defendants did not pay McCoy and similarly situated Dancers any wages for this work.

47. On multiple occasions, McCoy and similarly situated Dancers worked more than forty hours in a workweek for Defendants.

48. When McCoy and similarly situated Dancers worked over forty hours in a workweek for Defendants, Defendants did not pay McCoy and similarly situated Dancers time-and-a-half overtime wages for the hours that they worked over forty in a workweek. Indeed,

Defendants did not pay McCoy and similarly situated Dancers any wages whatsoever for any hours that they worked.

## COUNT I
## UNPAID MINIMUM WAGE

49. McCoy and similarly situated Dancers re-allege each allegation set forth in paragraphs 1-48 above.

50. Defendants are required to comply with the minimum wage requirements set forth in the Ohio Constitution, the Ohio Revised Code, and the Fair Labor Standards Act, 29 U.S.C. Sections 201, *et seq*.

51. Defendants have violated Section 34a, Article II of the Ohio Constitution, Ohio Revised Code Section 4111.14, and the Fair Labor Standards Act by not paying McCoy and similarly situated Dancers at least minimum wages for all hours worked.

52. McCoy and similarly situated Dancers have been damaged by Defendants' nonpayment of minimum wages.

53. In addition to being entitled to unpaid back wages, McCoy and similarly situated Dancers are entitled two times back wages as liquidated damages under the Ohio Revised Code or, in the alternative, liquidated damages under the Fair Labor Standards Act.

54. Defendants are liable for the costs and reasonable attorney's fees of McCoy and similarly situated Dancers pursuant to the Fair Labor Standards Act and Section 34a of Article II of the Ohio Constitution.

## COUNT II
## UNPAID OVERTIME WAGES

55. McCoy and similarly situated Dancers re-allege each allegation set forth in paragraphs 1-54 above.

56. McCoy and similarly situated Dancers worked significantly more than forty hours per week for Defendants.

57. Defendants did not pay McCoy and similarly situated Dancers any wages whatsoever, let alone time-and-a-half overtime wages, for any hours that McCoy and similarly situated Dancers worked over forty in a workweek.

58. Defendants are required to comply with overtime requirements set forth in the Ohio Revised Code and the Fair Labor Standards Act, 29 U.S.C. Sections 201, *et seq*.

59. Defendants were McCoy and similarly situated Dancers' employer.

60. Defendants have violated Ohio Revised Code Sections 4111.03 and 4111.10 and the Fair Labor Standards Act by not paying McCoy and similarly situated Dancers time-and-a-half overtime wages for all hours worked over a regular forty-hour workweek.

61. Defendants' conduct with regard to not paying time-and-a-half overtime wages to McCoy and similarly situated Dancers was willful.

62. McCoy and similarly situated Dancers have been damaged by Defendants' non-payment of time-and-a-half overtime wages.

63. McCoy and similarly situated Dancers are entitled to liquidated damages of one times unpaid overtime compensation pursuant to the Fair Labor Standards Act.

64. Defendants are liable for the costs and reasonable attorney's fees of McCoy and similarly situated Dancers pursuant to Ohio Revised Code Section 4111.10 and the Fair Labor Standards Act.

WHEREFORE, McCoy and similarly situated Dancers demand judgment against Defendants for their unpaid minimum and overtime wages, liquidated damages, post-judgment interest, attorney's fees and costs, and all other relief to which they are entitled.

JURY TRIAL DEMANDED.

Respectfully submitted,

/s/ Christopher M. Sams
Stephan I. Voudris, Esq. (0055795)
Christopher M. Sams, Esq. (009713)
Voudris Law LLC
8401 Chagrin Road, Suite 8
Chagrin Falls, OH 44023
svoudris@voudrislaw.com
csams@voudrislaw.com
440-543-0670
440-543-0721 (fax)
*Counsel for Plaintiff*